UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TURQUOISE N. FAVORS

                        Plaintiff,            06-CV-526

            v.                                **DECISION**
                                              **and ORDER**
MICHAEL J. ASTRUE[1], Commissioner
of Social Security

                        Defendant.
_____


### INTRODUCTION

     Plaintiff Turquoise N. Favors ("Plaintiff") brings this action
pursuant to the Social Security Act § 216(I) and § 223, seeking
review of a final decision of the Commissioner of Social Security
("Commissioner"), denying her application for Disability Insurance
Benefits and Supplemental Security Income ("SSI") payments.
Specifically, Plaintiff alleges that the decision of Administrative
Law Judge ("ALJ") Paula F. Garrety denying her application for
benefits was not supported by substantial evidence contained in the
record and was contrary to applicable legal standards.

     The Commissioner moves for judgment on the pleadings pursuant
to Rule 12(c) of the Federal Rules of Civil Procedure, on grounds
that the ALJ's decision was supported by substantial evidence.

_____

[1] Michael J. Astrue became the Commissioner of Social Security on
February 12, 2007.  Pursuant to Rule 25 (d) (1) of the Federal
Rules of Civil Procedure, Michael J. Astrue is substituted for
his predecessors Commissioner JoAnne B. Barnhart as the proper
defendant in this suit.

Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on grounds that the Commissioner's decision was erroneous.  For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable law.  I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's cross-motion for judgement on the pleadings.

## BACKGROUND

On March 29, 2004, Plaintiff, at that time 23 years-old, filed applications for Supplemental Security Income Benefits under Title II § 1614(a)(3)(A) of the Social Security Act claiming an inability to work since 2001, due to: asthma, depression and urticaria.  Plaintiff's application was denied by the Social Security Administration ("the Administration") initially on June 10, 2004.  Claimant filed a timely written request for a hearing on December 6, 2004.

Thereafter, on December 15, 2005, Plaintiff appeared with counsel in Buffalo, New York, before the ALJ who presided from Elkins Park, Pennsylvania via teleconference.  In a decision dated January 23, 2006, the ALJ determined that Plaintiff was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied

Plaintiff's request for review on July 21, 2006. On August 7, 2006, Plaintiff filed this action.

## DISCUSSION

## I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was

reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## II.   <u>The Commissioner's decision to deny the Plaintiff benefits is supported by substantial evidence in the record.</u>

### A.   <u>The ALJ's decision.</u>

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis in determining whether or not the Plaintiff is disabled. <u>See</u> 20 C.F.R. § 404.1520. Pursuant to this five-step process, the ALJ first considers whether the claimant is currently engaged in substantial gainful activity. If the claimant is not engaged in such activity, the ALJ proceeds to Step 2 and considers whether the claimant has a severe impairment or impairments which significantly limit his physical or mental ability to do basic work activities.

4

At Step 3, if the claimant suffers from an impairment that is listed in Appendix 1 of Subpart P of the Social Security Regulations, the claimant will be considered disabled without considering other factors. If the claimant does not have an impairment listed in Appendix 1, the ALJ continues to Step 4, and must then determine whether or not the claimant, despite his impairments, retains the residual functional capacity to perform his past work. Finally, at Step 5 if the ALJ determines that the claimant is unable to perform his past work, the ALJ must then determine whether or not the claimant can perform other work in the local or national economy.

Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date.[2] (Transcript of Administrative Proceedings at page 19) (hereinafter "T."). At Steps 2 and 3, the ALJ concluded that Plaintiff's impairment of asthma was an impairment that was "severe" within the meaning of the Regulations but was not severe enough to meet or equal, either singly or in combination with any other impairment, any of the impairments listed in Appendix 1, Subpart P of Social Security Regulations. The ALJ also considered Plaintiff's emotional state and determined that Plaintiff's alleged depression did not significantly impact her

---

[2]The ALJ was aware that Plaintiff had worked as a cashier in 2001 for approximately 8 months. The ALJ found, however, that pursuant to 20 C.F.R. § 416.920(b), this work activity did not constitute substantial gainful activity.

ability to perform work-related functions, and therefore, was not severe.  Finally, the ALJ found that because Plaintiff's urticaria (a skin condition) responded well to Benadryl, it was not a severe impairment.

At Steps 4 and 5, the ALJ concluded that Plaintiff retained the residual functional capacity to perform the work requirements of "competitive, renumerative, unskilled work on a sustained basis." (T. at 20).  The ALJ limited Plaintiff to a low-stress job involving tasks with only 1 to 2 steps in a clean environment free of chemicals, smoke, and temperature extremes.  Also, because the Plaintiff had no past relevant work, the ALJ found that Plaintiff had no transferable job skills. Id.  Taking into account all of the Plaintiff's medical and vocational considerations, the ALJ concluded that Plaintiff had the residual functional capacity to perform unskilled sedentary work, and that such jobs exist in significant numbers in the national economy. Id.

**B.**   **The ALJ properly evaluated the medical opinions in the record.**

The ALJ properly relied upon substantial objective medical evidence, as well as Plaintiff's subjective complaints, in weighing the opinions of Plaintiff's physicians.  The ALJ afforded controlling weight to the opinions of Plaintiff's numerous treating physicians from the Erie County Medical Center outpatient clinic, as well as consulting physician Dr. Dina.  The ALJ assigned little

6

weight to the opinions of Plaintiff's Nurse Practitioner, Adrienne Roy, and social worker Ms. Reclin, since opinions from such sources do not constitute medical opinions upon which the ALJ may rely in determining a claimant's level of impairment. 20 C.F.R. § 416.913.

The medical findings in the record from Plaintiff's treating physician's indicate that Plaintiff's asthma only limits her ability to perform some work-related functions, and that all of her other medical ailments do not significantly impact her residual functional capacity. (T. at 19). The Social Security regulations require that a treating physician's opinion will be controlling if it is, "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). Because the opinions of Plaintiff's treating physicians are supported by the evidence contained in the record, I find that the ALJ gave proper weight to these opinions.

In November 2001, Plaintiff was seen at the Erie County Medical Center's ("ECMC") outpatient clinic for hives and for the worsening of her asthma symptoms. (T. at 187). The examining doctor, whose signature is not legible, noted that Plaintiff's asthma started in 1999, during one of Plaintiff's pregnancies. Plaintiff's lungs showed normal respiratory effort and no wheezing. (T. at 188). The doctor advised Plaintiff to continue her use of Albuterol and Claritin. (T. at 190).

Dr. Fares treated Plaintiff in February 2003, at the ECMC outpatient clinic for complaints of swelling of the eyes and lips. (T. at 146). Dr. Fares diagnosed Plaintiff with asthma, urticaria, and allergic rhinitis. (T. at 147). Dr. Fares found that Plaintiff's lungs had good aeration with scattered inspiratory and expiratory wheezes. (T. at 149).

Plaintiff returned to the ECMC clinic in March 2003, and was seen by Dr. Pomakov. (T. at 177). According to the medical records from this visit, Plaintiff's asthma was well controlled, and she was using Albuterol no more than two to three times a week. Plaintiff's lungs also showed no signs of wheezing.

Dr. Rosella saw Plaintiff in July 2003. (T. at 143). Plaintiff complained of swelling of her eyes and lips, and mentioned that her asthma had worsened since she had been pregnant. Dr. Rosella prescribed Advair for the Plaintiff.

In May 2004, Plaintiff was consultatively examined by Dr. Dina for complaints of asthma. (T. at 191-194). Plaintiff stated that her asthma worsened with changes in the weather. Plaintiff informed Dr. Dina that she had no recent hospitalizations, and did not use a nebulizer for her asthma. Plaintiff informed Dr. Dina that she was able to perform day-to-day tasks, including: cooking, cleaning, laundry, and shopping with help from her children's father. Plaintiff told Dr. Dina that she was also able to take care of her kids, care for her own personal needs, watch

television, and read.  Dr. Dina examined Plaintiff and performed a pulmonary function test on Plaintiff.  Dr. Dina opined that Plaintiff had no functional limitations, and that Plaintiff should avoid exposure to factors that could trigger her asthma.

Also during May 2004, after her examination by Dr. Dina, Plaintiff was admitted to Buffalo General Hospital for four days for a single episode of major depression following the death of her nine-month old child. (T. at 222).  Examining doctor, Dr. Yadav, noted that after counseling, Plaintiff's demeanor seemed upbeat and that Plaintiff was future oriented.  Plaintiff was discharged in a psychiatrically stable condition and was advised to continue outpatient treatment.  At the time of discharge, Plaintiff denied having any suicidal ideations.

Plaintiff failed to follow-up with outpatient treatment until December 2004, when she sought treatment at the Mid-Erie Counseling and Treatment Services. (T. at 248-250).  Ms. Wurzer, a social worker, noted that Plaintiff was well-oriented, well-groomed, cooperative, and that Plaintiff's affect was appropriate but depressed.  Even though Plaintiff denied having hallucinations or suicidal ideations, Ms. Wurzer opined that Plaintiff suffered from depression, with recurrent psychotic features.  By April 2005, Ms. Wurzer commented that she was no longer able to assess Plaintiff's mental condition due to the infrequency of Plaintiff's visits. (T. at 246-247).

In July 2005, Plaintiff was seen at the outpatient clinic of Erie County Health Department for complaints of occasional wheezing. (T. at 267). Plaintiff admitted that she was not taking her asthma medicine as prescribed. Plaintiff's lungs were found to have mild, scattered respiratory wheezes and excellent aeration. Plaintiff was given a refill of Advair.

In September 2005, Plaintiff began to see Adrienne Roy ("Roy"), a Nurse Practitioner in Psychiatry, for complaints of voices inside her head and paranoia. (T. at 316-318). Roy found Plaintiff's concentration, insight, and judgment to be fair. Plaintiff's speech was normal and her affect was appropriate. During a return visit to Roy in October 2005, Plaintiff said that she heard voices less often and that her paranoia was better. (T. at 331). Following a visit in December 2005, Roy opined that Plaintiff was limited in her ability to understand, remember and carry out detailed instructions. (T. at 309-310). Roy also commented that Plaintiff was markedly impaired in her ability to complete a normal workday and workweek, without interruptions from psychologically based symptoms.

Also in December 2005, Plaintiff's social worker, Ms. Reclin, assessed that Plaintiff had a good ability to follow work rules. (T. at 313-314). Ms. Reclin opined that Plaintiff had no ability to understand, remember, and carry out complex job instructions, but had a fair ability to understand, remember and carry out

detailed and simple job instructions.  In conclusion, Ms. Reclin stated that Plaintiff had a fair ability to behave in an emotionally stable manner, related predictably in social situations, and demonstrated reliability.

By February 2006, Plaintiff informed Roy that her paranoia was better but that she still heard voices. (T. at 361).

The ALJ was not mandated to rely on the assessments of Roy or Ms. Reclin.  While both practitioners found that Plaintiff's impairments limited her ability to work, the ALJ did not adopt either of these opinions.  The regulations provide that social workers and nurse practitioners are not acceptable medical sources that can establish whether or not a claimant has a medically determinable impairment. 20 C.F.R. § 416.913.  Therefore, the ALJ considered only the opinions of the Plaintiff's treating and consulting physicians along with Plaintiff's subjective complaints, in determining that Plaintiff could perform low stress, simple, 1 to 2 step task work at all exertional levels. (T. at 54).  The ALJ's residual functional capacity finding that Plaintiff could perform work at all exertional levels with some nonexertional limitations is well-supported by medical evidence, and is consistent with substantial evidence in the record.

C. __The ALJ properly evaluated Plaintiff's subjective__
   __complaints.__

The ALJ correctly found that Plaintiff's subjective complaints were not entirely credible.  In finding that Plaintiff is capable of performing unskilled sedentary work in the national economy, the ALJ considered all of Plaintiff's allegations of functional limitations.  The ALJ found, however, that Plaintiff's allegations concerning the intensity, duration and limiting effects of her symptoms were unsupported by objective medical evidence. (T. at 54).

Plaintiff claims that she was required to stop working because of her asthma and environmental allergies. (T. at 77-78).  However, to sustain a finding of a disability, a plaintiff must establish that a medically determinable impairment is the cause of the disability. 42 U.S.C. § 423(d)(1(A).  To make such finding there must be an indication of a medical condition that would reasonably be expected to produce the symptoms alleged by the Plaintiff. 20 C.F.R. § 416.929; SSR 96-7p.  In this case, however, the medical evidence in the record and Plaintiff's own statements do not support Plaintiff's allegations of a complete inability to work. (T. at 53-54).  For example, although the Plaintiff alleged that she was unable to perform chores since January 2005, Plaintiff completed a form for the New York State Office of Temporary and Disability Assistance, in which she indicated that she was able to perform daily chores. (T. at 39-42, 109-112).  Plaintiff also

informed Dr. Dina that she could cook, clean, do laundry, and shop. (T. at 191).  The ability to perform these tasks contradicts Plaintiff's claim that she is disabled.

Despite finding that Plaintiff's testimony was not entirely credible, the ALJ did not completely discount Plaintiff's subjective complaints.  It is apparent that the ALJ considered, at least in part, Plaintiff's subjective complaints when she determined that although the Plaintiff could perform competitive unskilled work, Plaintiff should be limited to only such work that is performed in a low-stress environment, and requires only simple tasks. (T. at 54).  Therefore, the ALJ properly assessed Plaintiff's ability to perform unskilled, sedentary work, in light of Plaintiff's subjective complaints.

### III. __The evidence in the record does not establish that Plaintiff had mental retardation during the time period for which benefits were denied.__

Plaintiff claims that she has mental retardation.  There is no evidence in the record, however, to establish that Plaintiff had mental retardation before age 22. (Pl. Br. at 5).  Dr. Ryan's diagnosis of mental retardation occurred when Plaintiff was 27 years old, which is outside the relevant time period. (Pl. Br. at 14).  More importantly, there is no record that any physician diagnosed Plaintiff as being mentally impaired during the relevant time period.  Also, Dr. Hernandez diagnosed Plaintiff with borderline intellectual functioning during the relevant period,

13

however, borderline intellectual functioning is not mental retardation and does not, by itself, establish the presence of a disability. (Pl. Br. at 6, T. at 254).

## <u>CONCLUSION</u>

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 17, 2008